A04A1746. CARVER et al. v. EMPIRE FIRE & MARINE
INSURANCE COMPANY.
A04A1747. CARVER et al. v. CANAL INDEMNITY COMPANY.
A04A1748. DANIELS et al. v. EMPIRE FIRE & MARINE
INSURANCE COMPANY.
(605 SE2d 842)

JOHNSON, Presiding Judge.

Empire Fire & Marine Insurance Company ("Empire") filed a declaratory judgment action against James R. Carver, Carver's Service, Inc., Jacquelyn P. Daniels and Joseph L. Daniels (the "defendants"), among others, seeking a ruling that its insurance policies provided no coverage for claims arising from a January 26, 1999 automobile accident. Canal Indemnity Company ("Canal") also filed a declaratory judgment action against the defendants seeking a ruling that its insurance policy did not provide coverage for claims arising from the January 26, 1999 accident.

The accident involved a single automobile driven by Shana Carver, James Carver's wife, and owned by Carver's Service. Haley Mosley, Shana Carver's daughter, was a passenger in the vehicle, as were Joey Allen Daniels and Joseph Patrick Daniels. Shana Carver and Joey Allen Daniels died in the accident while Haley Mosley and Joseph Patrick Daniels, both minors, were injured. As a result of the accident, Haley Mosley, through her father and natural guardian, George Mosley, sued James Carver and Carver's Service. Jacquelyn Daniels and Joseph L. Daniels, as next friends and legal custodians

of Jordan Ashley Daniels and Joseph Patrick Daniels, also filed a lawsuit against James Carver and Carver's Service in connection with the accident.

In Case No. A04A1747, James Carver and Carver's Service appeal from the order of the trial court limiting Canal's coverage of the claims of Jacquelyn Daniels and Joseph L. Daniels to the mandatory minimum required by law. In Case No. A04A1746, James Carver and Carver's Service claim the trial court erred in ruling on Empire's motion for summary judgment without considering an excess insurance policy that Empire had issued to Carver's Service. In Case No. A04A1748, Jacquelyn Daniels and Joseph L. Daniels also claim the trial court erred by failing to consider the excess insurance policy. We have consolidated these appeals for purposes of this opinion. For the reasons set forth below, we affirm in Case No. A04A1747. In Case No. A04A1746 and Case No. A04A1748, we agree that the trial court overlooked the excess insurance policy and remand the cases for a ruling as to that policy.

## Case No. A04A1747

After filing its declaratory judgment action, Canal moved for summary judgment. In its order on Canal's motion, the trial court found that Canal's insurance policy provided coverage for the Daniels' claims in the amounts of $15,000 per person and $30,000 per event, the applicable minimum mandatory coverage. The trial court also found that Canal's policy provided coverage for George Mosley's claims in the amount of $15,000 per person and $30,000 per event. James Carver and Carver's Service claim that the trial court erred in limiting Canal's coverage of the Daniels' claims to the mandatory minimum coverage provided by law and not the higher bodily injury liability coverage provided by Canal's policy, which were $30,000 for each person and $100,000 per event.

> In Georgia, insurance is a matter of contract, and the parties to an insurance policy are bound by its plain and unambiguous terms. Although such contracts are construed against the insurer if the provisions are susceptible to more than one interpretation, if the language is unambiguous and but one reasonable construction is possible, the court will enforce the contract as written.[1]

---

[1] (Punctuation and footnotes omitted.) *SawHorse, Inc. v. Southern Guaranty Ins. Co.*, 269 Ga. App. 493, 494 (1) (604 SE2d 541) (2004).

Canal's policy included the following exclusion to coverage:

It is understood and agreed that certain employees, officers, or managers of the corporation which is the named insured on this policy and others will be furnished automobiles by the named insured to drive. In consideration of the reduced premium at which this policy is written, it is further understood and agreed that it is the desire of the named insured to limit coverage under this policy and the company and the named insured agree to limit the policy as follows:

Such coverage as is afforded by this policy shall not apply and no insurance is provided under this policy to any loss arising out of the ownership, maintenance, operation, use, loading or unloading of any automobile in the care, custody, or control, being driven, operated, manipulated, serviced, or used in any manner by a person who is residing in the household of the named insured's employees, officers, managers or others to whom the named insured furnishes an automobile, or is a resident of the household of the named insured's employees, officers, managers or others to whom the named insured furnishes an automobile but is temporarily living at another location such as college or military, or is a minor or dependent child of the named insured's employees, officers, managers or others to whom the named insured furnishes an automobile wherever the minor or dependent child is residing, unless that person is named in this form.

James Carver contends that the phrase "any loss" in the exclusion refers only to a loss incurred by those listed in the endorsement, consisting of persons who reside in the household of an employee, officer, or manager of the named insured Carver's Service, or others to whom Carver's Service had furnished a vehicle. In such case, James Carver argues, the exclusion would not apply to injuries sustained by third parties not described in the endorsement, and Joey Allen Daniels and Joseph Patrick Daniels were not so described as they did not reside with James Carver. We disagree with James Carver's interpretation because the exclusion applies to any loss "arising out of" the use of an automobile by the described class of persons and not any loss "to" the described class of persons. In reviewing an insurance policy, our Supreme Court has interpreted an event "arising out of" a person's action to constitute an event that

would not have occurred but for the person's action.[2] Because Shana Carver lived with James Carver, Canal's policy did not cover "any loss arising out of" her use of an automobile. The Daniels' loss would not have occurred but for Shana Carver's act of driving an automobile. It follows that the trial court did not err when it failed to extend the full limits of coverage under the Canal policy to the Daniels' claims.

## *Case Nos. A04A1746 and A04A1748*

The evidence shows that Empire issued two insurance policies to Carver's Service which were in effect at the time of the accident, including a primary policy and a policy providing excess coverage. In its order, the trial court referred to only one policy of insurance, and the defendants argue that it is apparent from the trial court's order that it did not consider the excess policy. Empire contends that the trial court necessarily considered both policies in reaching its conclusion, and the defendants cannot claim that the trial court overlooked the excess policy.

We believe the trial court overlooked the excess policy for two reasons. First, the trial court only refers to one insurance policy. The initial complaint sought a declaratory judgment as to two policies of insurance. Empire's motion for summary judgment refers to both insurance policies, as do the defendants' responses. Second, consideration of the excess policy was not made explicit in the trial court's order. The policy limits of the primary policy as to bodily injury are $15,000 per person and $30,000 per accident. The policy limit of the excess policy is $1,000,000. In its excess policy, Empire promised that "[w]e will pay all sums an 'insured' legally must pay as damages in excess of the 'primary insurance.' . . . We will not provide coverage if the 'loss' is not covered under the 'primary insurance.' " Because the trial court found insurance coverage was available in the amount provided by the primary policy, the trial court should have directly addressed whether the excess policy also provided coverage.

Empire argues that the trial court implicitly considered the excess policy in view of its request that the parties provide evidence of whether Shana Carver had other insurance coverage. But the trial court's only reference to other policies is to whether any existed to provide minimum coverage to Shana Carver. The trial court wrote that "since no party has introduced evidence that Ms. Carver had the minimum liability coverage required by law pursuant to the Court's direction they do so if there was such coverage, the family exclusion

---

[2] See *Continental Cas. Co. v. HSI Financial Svcs.*, 266 Ga. 260, 262 (466 SE2d 4) (1996). See also *Pilz v. Monticello Ins. Co.*, 267 Ga. App. 370, 371-372 (599 SE2d 220) (2004).

provision noted above in the policy issued by [Empire] is inapplicable. . . ." If the trial court considered other policies in the context of whether minimum coverage was available to Shana Carver, such consideration does not imply that the trial court necessarily considered the possibility of excess coverage.

Empire also maintains that the trial court's statement that insurance would apply "up to the amount of mandatory minimum liability coverage" as to the claims of Jacquelyn and Joseph Daniels shows that the trial court implicitly considered the excess insurance policy. Empire relies on cases such as *Stepho v. Allstate Ins. Co.*,[3] in which our Supreme Court found the exclusion in an automobile insurance policy's family immunity endorsement to be against public policy, but that the exclusion failed only to the extent of the mandatory coverage requirements.[4] Empire argues the family immunity exclusion in the primary policy excluded coverage for the Daniels' claims and was invalid only to the extent that public policy required that minimum coverage be made available. Therefore, Empire contends, the family immunity exclusion in the excess policy, which was identical to that in the primary policy, would not provide coverage. While this scenario may be logically sound, it does not show the trial court considered the excess policy.[5] Unlike the Canal policy considered above, the family immunity exclusion in the Empire policies does not appear to exclude the Daniels' claims. The Empire policy endorsements provide "This insurance does not apply to: 'Bodily injury' to any 'insured' or any family member of an 'insured': a. who resides in the same household as an 'insured'; and b. while such 'insured' or family member is occupying a covered 'auto.' " Therefore, while the policies' family immunity endorsement excludes coverage for bodily injury to James Carver's family members who resided with him and were occupying a covered vehicle, Joey Allen Daniels and Joseph Patrick Daniels were not shown to be residing with James Carver or even to be members of James Carver's family.

The trial court, however, never clearly ruled that the family immunity endorsement excluded the Daniels' claims. Rather, the trial court's analysis was that because minimum liability coverage was not otherwise available to Shana Carver, the family immunity endorsement was inapplicable up to the minimum coverage limits. The trial court did not need to take the analysis further as to the primary policy because coverage under the primary policy was the

---

[3] 259 Ga. 475 (383 SE2d 887) (1989).

[4] Id. at 477 (2).

[5] We note that the trial court did not cite to *Stepho*, supra, or other case law in ruling on the Daniels' claims.

same as the minimum liability coverage then required by law.[6] Only if the trial court had considered the excess policy would the question of whether the family immunity endorsement excluded the Daniels' claims have to be addressed directly, but the trial court does not do so. And as to George Mosley's claims, the trial court only finds the family immunity endorsement to be "invalid," finds coverage in the amount available under the primary policy, and makes no reference to a second policy. Based on the foregoing, including the trial court's reference to only one policy and the analysis contained in the order, we conclude the trial court's order only considered the primary policy and cannot be reasonably interpreted as a ruling on both the primary and excess policies.

The defendants contend the trial court should have found the excess policy provided coverage for claims arising out of the January 26, 1999 accident. Empire maintains that if the trial court did not rule on the excess policy that the cases should be remanded. We agree. We cannot determine whether the excess policy provides coverage because there is no trial court ruling on the excess policy which we may review. "This court is for the correction of errors, and where the trial court has not ruled on an issue, we will not address it."[7] The cases must be remanded so that the trial court may address Empire's motion with respect to the excess policy.[8] As the trial court found Empire provided coverage to the extent of the limits of the primary policy, the defendants do not appeal the trial court's ruling as to the primary policy.

*Judgment affirmed in Case No. A04A1747. Judgment affirmed and cases remanded with direction in Case Nos. A04A1746 and A04A1748. Smith, C. J., and Phipps, J., concur.*

DECIDED OCTOBER 19, 2004.

*William B. Johnson*, for Carver et al.

*Gordon & Hires, Raymond S. Gordon, Jr., W. Jefferson Hires*, for Daniels et al.

*Brennan & Wasden, Marvin W. McGahee*, for Empire Fire & Marine Insurance Company.

*Clyde M. Urquhart*, for Canal Indemnity Company.

---

[6] OCGA § 33-7-11.

[7] *Pyle v. City of Cedartown*, 240 Ga. App. 445, 448 (3) (524 SE2d 7) (1999).

[8] *Howard v. Estate of Howard*, 249 Ga. App. 287, 292 (3) (548 SE2d 48) (2001) (case remanded where trial court did not address determinative issue raised below).