A06A0337. EMPIRE FIRE & MARINE INSURANCE COMPANY v. DANIELS et al.
(631 SE2d 799)

ANDREWS, Presiding Judge.

Empire Fire & Marine Insurance Company appeals from the trial court's order granting summary judgment to Joseph and Jacquelyn Daniels on Empire's Complaint for Declaratory Judgment. Because the trial court correctly held that Shana Carver, the driver of the car involved in the accident in which Joey Allen Daniels was killed and Joseph Patrick Daniels was injured, was an insured under the Empire policy at issue, we affirm.

This is the second appearance of this case in our Court. See *Carver v. Empire Fire &c. Ins. Co.*, 270 Ga. App. 100 (605 SE2d 842) (2004).[1] The case arose after a single car accident in which Shana Carver, the driver of the car, and Joey Allen Daniels were killed and Haley Mosley, Shana Carver's daughter, and Joseph Patrick Daniels, both minors were injured. Id. at 100-101.

The car Shana Carver was driving at the time of the accident was a rental car belonging to Carver Services, Inc., a company owned by her husband, James Carver. The company was in the business of selling and renting cars. The company was insured under both a primary and excess commercial lines insurance policy from Empire.

Initially, the trial court held that the primary Empire policy provided coverage for the Daniels's claims but made no specific ruling as to the excess policy. On appeal, this Court remanded to the trial court for consideration of coverage under the excess policy. *Carver*, supra at 105. On remand, the trial court found that the excess policy also provided coverage for the Daniels's claims and this appeal followed.

Summary judgment is appropriate when the court, viewing all the facts and evidence and reasonable inferences from those facts in

---

[1] There were three cases at issue in the original appeal. The instant case concerns only the availability of coverage for the Daniels's claims under the excess policy issued by Empire to Carver Services, Inc.

a light most favorable to the nonmovant, concludes that the evidence does not create a triable issue as to each essential element of the case. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). On appeal from a grant of a motion for summary judgment, we review the evidence de novo to determine whether a genuine issue of fact remains and whether the moving party is entitled to judgment as a matter of law. *Burdick v. Govt. Employees Ins. Co.*, 277 Ga. App. 391 (626 SE2d 587) (2006).

Here, the record shows that the Empire policy provided coverage for an insured who was in the business of renting vehicles, but did not provide liability coverage to the customers who rented the vehicles. Accordingly, the issue before us is whether Shana Carver was an insured under the policy or was a rentee under the policy.

The policy defines an "insured" as:

a. You for any covered "auto";

b. Your employee, but only while acting within the scope of his or her duties; and

c. Anyone else while using with your permission a covered "auto" you own. . . .

Excluded from coverage are the rentee and any other person using a covered auto with the permission of the rentee. "Rentee" is defined in the policy as "the person or organization" named in the "rental agreement" who rents or leases an "auto" from the Named "Insured." "Rental Agreement" is defined as "the written rental contract" by which the "rentee" rents or leases the "rental vehicle" from the named "Insured."

James Carver was deposed twice. His first deposition, taken in July 2002, varies considerably from the deposition taken in May 2003. In his first deposition, Carver was asked whether a written rental agreement was always completed each time that Shana Carver rented a vehicle from the business. Carver responded, "Yes, I believe, I'm pretty sure we did." Carver said that he did not have the rental agreement. He said that his office was broken into after the accident and he later realized that those files were missing.

In his second deposition, Carver stated that the only time a rental agreement was filled out for either him, his wife, or another family member was the one filled out for Shana Carver just before the accident. Although he did not have a copy of this agreement at his first deposition, Carver produced an almost illegible copy at the second one. The agreement showed a charge of $200 as a deposit, but the testimony was that this was not paid. Donald McClain, one of

Carver's employees, testified that although his name was at the bottom of the copy of the rental agreement, he did not "remember really doing any paperwork to speak of." McClain also stated that Shana Carver would not have filled it out herself. McClain knew of no other time Shana Carver had signed a rental agreement when she used a car belonging to the business.

There was consistent testimony, however, that Carver himself never filled out any rental agreement when he used a car and neither Carver nor his wife ever paid rent when they used a rental car.

After the case was remanded from this Court, the trial court initially asked both parties to submit briefs on whether the rental agreement produced by James Carver and allegedly signed by Shana Carver was a "sham." The parties did so; but in its final order, the trial court held that "the genuineness of the purported rental agreement is not a material issue in this case." The court held that,

> [a]fter considering the relevant policy language, the Court concludes that the coverage exclusion for "rentees" upon which Plaintiff relies cannot be construed broadly to include gratuitous use of vehicles, even if rental agreements are executed with respect to that use. The use of the word "rent" in the definitions of "rent" and "rental agreement" means that the payment of rent in exchange for the right to use the vehicles must be shown to bring a user under that exclusion.

Because the term "rent" was not defined in the agreement, the trial court found that the dictionary defined "rent," as "the amount paid by a hirer of personal property to the owner for the use thereof." In this case, it is undisputed that Shana Carver paid no rent for the use of the car involved in the accident. Further, the trial court found that when the word "rent" was used as a verb, the dictionary defined it as "to grant the possession and enjoyment of in exchange for rent; to take and hold under an agreement to pay rent." Here, there was no such agreement and no contemplation of such an agreement.

Accordingly, the court correctly determined that Shana Carver did not come within the definition of a "rentee" under the policy. It is apparent from the record that Shana Carver was instead an "insured" under the policy, coming within that definition as someone using a covered auto with the permission of the named insured, her husband.

1. On appeal, Empire argues that the trial court erred in concluding that key words which were not defined in the policy were ambiguous such that they required a narrow construction by the court. Empire states that it is the "rental agreement" that controls in this case, not whether any money was paid to rent the car. Empire cites to no authority for this statement.

First, contrary to what Empire argues on appeal, the trial court never found that the rental agreement was genuine. Empire's statement in its brief that "[t]he Trial Court found this document to be genuine" is patently incorrect.

Further, the trial court never concluded that any terms in the policy were ambiguous. Instead, the trial court noted that the term "rent" was not defined in the policy and accordingly used the widely accepted definition of the word. See *Southern Trust Ins. Co. v. Dr. T's Nature Products Co.*, 261 Ga. App. 806, 808 (584 SE2d 34) (2003) (Absent a definition of a term in the policy, we look to the commonly accepted meaning of the term.). See also *Cunningham v. Middle Ga. Mut. Ins. Co.*, 268 Ga. App. 181, 183 (601 SE2d 382) (2004) ("[I]n determining the meaning of [words used in the insurance policy], dictionaries supply the plain, ordinary, and popular sense."). Here, there being no definition of the word "rent" in the policy, the trial court was entitled to use the dictionary to determine the plain and generally accepted meaning of the term. This enumeration of error has no merit.

2. Next, Empire argues that the trial court erred in using such a "narrow" definition of rent. As Empire points out, it has no authority for this argument, and we find none. Further, "[u]nder the rules of contract construction, the policy is construed against the insurer as the drafter of the policy and any exclusions from coverage are strictly construed." (Punctuation omitted.) *Cunningham*, supra at 183.

3. In its third enumeration of error, Empire states: "The trial court erred in concluding that the exclusion of the excess policy cannot apply to the use of a rental vehicle except where there is proof of actual payment of money for the rental of the vehicle, even where there is a valid rental agreement." Again, Empire is misconstruing the record. The court never found there was a valid rental agreement. The court stated that it was not deciding the genuineness of the rental agreement and indeed, the court's use of the adjective "purported" to describe the agreement supports this.

Empire argues that there are "considerations" other than money that will support a valid contract. We agree. But none of the situations envisioned by Empire has any application to this case. Further, insurance companies who write policies for businesses that provide vehicles to customers while their cars are being serviced or businesses that provide cars to customers who have accumulated frequent flier miles or points may write their policies and define their terms accordingly.

To the extent that Empire has made additional arguments within this enumeration, we find them to be unsupported by any authority showing there was reversible error.

Accordingly, because Shana Carver was not a "rentee" under the policy but instead came within the definition of an "insured," the trial court did not err in concluding that there was coverage for the Daniels's claims under the excess policy issued by Empire.

*Judgment affirmed. Barnes and Bernes, JJ., concur.*

DECIDED MAY 31, 2006 — 

*Brennan & Wasden, Marvin W. McGahee*, for appellant.
*Gordon & Hires, Raymond S. Gordon, Jr., W. Jefferson Hires*, for appellees.

